UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

Stacy Baker,                                            Case No. 7-09-12115

      Debtor.

Lopez Roofing Service, Inc.,

      Plaintiff,

v.                                                      Adv. Pro. No. 09-01089

Stacy Baker,

      Defendant.

### MEMORANDUM OPINION ON THE AMOUNT OF PLAINTIFF'S § 523(a)(4) NONDISCHARGEABLE DAMAGES

On October 21, 2013, Plaintiff filed a Motion For Summary Judgment on First Amended Complaint, etc., doc. 67 (the "Motion"). The Court granted the Motion in part on December 12, 2013, ruling that Plaintiff was entitled to a nondischargeability judgment under § 523(a)(4) because of Defendant's embezzlement,[1] but that the amount of the judgment could not be determined from the record.[2]

The Court conducted a final hearing on January 22, 2014, on the proper nondischargeable judgment amount. Trace Rabern appeared for Plaintiff. The Defendant appeared *pro se*. The Court heard the testimony of Plaintiff's representative and Defendant, admitted Plaintiff's documents into evidence, and heard arguments of the

---

[1] All statutory references are to 11 U.S.C.
[2] Memorandum Opinion and Order on Plaintiff's Motion for Summary Judgment, docs. 71 and 72.

parties. The Court believes that there is now a sufficient record upon which to base a determination of the nondischargeable amount.

## I.     FACTS

The Court makes the following findings of fact:[3]

    1.    Plaintiff is in the residential and commercial roofing business.

    2.    Tricia Lopez is an Assistant Vice President and co-owner of Plaintiff. She manages employees and handles financial accounting.

    3.    Ms. Lopez worked in Albuquerque from 1996 to 2008. She hired Defendant in 2004 to be the office manager of Plaintiff's Albuquerque office. Ms. Lopez was her supervisor.

    4.    Defendant performed bookkeeping, accounting, and other administrative tasks for the company.

    5.    Defendant was in a position of trust, dealing with payroll and management of accounts.

    6.    Defendant had check-writing authority, and also had the authority to charge purchases to Plaintiff's bank account.[4]

    7.    Initially, Defendant had Ms. Lopez' tacit or express approval for charges that might reasonably be questioned. At some point, however, Defendant admitted that

---

[3] The facts are found mostly from the hearing exhibits submitted by Plaintiff, and from the testimony of Tricia Lopez, Plaintiff's Vice President. However, the exhibit to Ms. Lopez' affidavit, Exhibit 1, is not as complete as the comparable exhibit to Ms. Lopez' affidavit submitted in support of the Motion. The Court therefore referred at times to this exhibit, which is also part of the record.

[4] The charges are denoted "auto debits" on the list of questioned transactions submitted by Plaintiff, so the Court assumes, but does not know, that Defendant used a debit card or something similar, rather than a credit card. The method of payment is not crucial, however.

-2-

her use of Plaintiff's funds "got out of hand," meaning that there was no colorable argument that the expenses were business-related—they were solely to pay Defendant's personal expenses, were unauthorized, and constituted embezzlement.

8. Plaintiff's accounting controls were lax or nonexistent. It is clear from the evidence that Plaintiff did not review Defendant's check-writing and debit/credit charges until years later, even though the improper transactions were generally in "plain view" or easy to discover.

9. Plaintiff closed the Albuquerque office in 2008, and Defendant was laid off. Thereafter, Ms. Lopez reviewed the books of the Albuquerque office and realized that there were problems. She conducted an internal audit of expenses and payments between 2004 and 2008.

10. Ms. Lopez concluded that Defendant embezzled a total of $60,351.76.

11. Plaintiff claimed other losses caused by Defendant's embezzlement, including $15,200 for accounting and audit fees. Of this amount, $12,800 is for Ms. Lopez's time to conduct the audit, based on her salary, and $1,500 is for the time of another employee, JoAnn (her last name was not provided).

12. Plaintiff also claimed consequential damages of $29,000 and attorney fees of $1,578.05.

13. On January 26, 2009, Plaintiff commenced a collection action against Defendant in state court, which resulted in a March 12, 2009 default judgment in the amount of $106,351.11.

14. Ms. Lopez turned over the results of her internal audit to the New Mexico State Police and the Bernalillo County District Attorney.

15. The State of New Mexico filed a criminal complaint against the Defendant in the Second Judicial District Court, State of New Mexico, commencing *State of New Mexico v. Stacy Baker,* cause no. CR10-00141 (the "Criminal Action").

16. Defendant and the State of New Mexico entered into a plea agreement on May 26, 2011. Defendant was represented by a public defender when the plea agreement was negotiated.

17. In the plea agreement, Defendant plead guilty to two counts of criminal embezzlement under New Mexico law, N.M.S.A. § 30-16-8.

18. As part of the plea agreement, Plaintiff agreed to pay restitution to Plaintiff in the amount of $40,097.04. Defendant's public defender reviewed the audit information prepared by Ms. Lopez and agreed that $40,097.04 was a reasonable figure for restitution.

19. Defendant paid $845 under the restitution agreement.

20. The following table compares what Plaintiff sought in the Motion and what it asked for at the conclusion of the damages hearing:

| Damages Category | Motion | Final Hearing |
|---|---|---|
| Embezzlement amount | $60,351.76 | $60,351.76 |
| Audit/accounting fees | $15,200 | $14,300 |
| Interest/lost econ. opportunity costs | $29,000 | $0 |
| Court costs | $121.30 | $0 |
| Attorney fees | $1,578.05 | $0 |
| Binding costs | $0 | $900 |
| Less restitution payments | $0 | -$845 |
| Punitive damages | Unspecified | $0 |
| Total | $106,351.11 plus punitive damages | $74,706.76 |

-4-

21. Defendant is still on probation and still attempting to make restitution payments. Initially, her mother made the required payments. In about December 2012, Defendant's mother was laid off, so she couldn't make any additional payments.

22. Defendant is unemployed. She goes weekly to try and find employment, but because of failed background checks she can't get a job. She can't even find work at a fast food restaurant because of the embezzlement conviction.

23. Defendant has two children. She lives at a women's shelter and has little or no income. She is receiving food assistance from the State of New Mexico.

24. Defendant has made a few small restitution payments since her mother was laid off, but has insufficient income to pay more. She is afraid that unless she pays more money, she will violate the terms of her parole and be sent to jail.

25. The Court referred the matter to post-hearing mediation. A mediation was scheduled for February 25, 2014. Defendant did not appear at the mediation.[5]

## II. DISCUSSION

Based on the plea agreement and resulting conviction, the Court previously ruled that Defendant had embezzled from Plaintiff. The Court must now determine the proper nondischargeable amount.

In general, damages for nondischargeable debts include losses proximately caused by the debtor's conduct. The leading case is *Cohen v. de la Cruz,* 523 U.S. 213 (1998). In *Cohen*, the debtor argued that nondischargeable damages for fraud under § 523(a)(2) are limited to the amount obtained by the debtor from the fraudulent activity, and should not include punitive damages. The Supreme Court ruled against the debtor, holding that

---

[5] See the letter from the mediator, doc. 83, filed February 27, 2014.

a "debt for" money, property, or services obtained by fraud should be construed to mean "all liability arising from fraud." 523 U.S. at 222.

Although *Cohen* dealt with nondischargeable debt under § 523(a)(2)(A), its holding likely applies to nondischargeable embezzlement debts as well. In *In re Musgrave,* 2011 WL 312883 (10th Cir. BAP 2011) (unpublished), the Tenth Circuit Bankruptcy Appellate Panel discussed whether a nondischargeable judgment against the debtor, a contractor, under § 523(a)(4) and (6) should include the cost to repair defective work. To answer the question, the court extensively cited and quoted *Cohen,* and then held that "[a]lthough *Cohen* involved a § 523(a)(2) claim, the Supreme Court's analysis of the text and structure of § 523(a) suggest its holding is not limited to § 523(a)(2)." *Musgrave,* 2011 WL 312883, at *9.

Nondischargeable damages for embezzlement historically were more limited than *Cohen's* proximate cause standard. For example, the *Musgrave* court stated that "damages for embezzlement and theft claims are generally limited to money or property inappropriately used, the actual cost of accounting fees incurred to discover and verify the sums involved, and punitive damages." *Musgrave,* 2011 WL 312883, at *11 (footnotes omitted), citing *Brookman v. Gibson (In re Gibson),* 77 B.R. 829, 831 (Bankr. D. Colo. 1987). *See also Eau Claire County v. Loken (In re Loken)*, 32 B.R. 205, 208 (Bankr. W.D. Wis. 1983) (included audit fees that "proximately flowed from" debtor's wrongdoing in nondischargeable amount). Nevertheless, the *Musgrave* court acknowledged that the *Cohen* decision likely expanded the prior types of nondischargeable embezzlement damages:

> … nor do we see any evidence in the record that would support a finding the Repair Cost *arose from* embezzlement or larceny. We conclude the

> bankruptcy court erred in determining that the Repair Cost was a compensatory damage that resulted from either larceny or embezzlement and, absent such evidence, these damages cannot be held nondischargeable under the embezzlement or larceny exceptions.

*Musgrave*, 2011 WL 312883, at *11 (italics added). *See also In re Houng,* 499 B.R. 751, 775 (C.D. Cal. 2013) (citing *Cohen* for the proposition that embezzlement damages would be treated under the same "arising from" standard); *Heard v. Perkins,* 441 B.R. 701, 707 (N.D. Ala. 2010) (§ 523(a)(4) requires that the debt at issue resulted from the debtor's defalcation); *In re Roussos,* 251 B.R. 86, 94 (9th Cir. BAP 2000) (the *Cohen* court read § 523(a)(2) in *pari materia* with other nondischargeability sections, including § 523(a)(4)).

The Court, following *Cohen* and *Musgrave,* will when determining the appropriate nondischargeable amount consider the amount embezzled; accounting fees incurred to discover and verify the embezzlement; any punitive damages awardable; and other damages proximately caused by the embezzlement.[6]

### A. The amount embezzled.

There is no question that the nondischargeable judgment should include the amount actually embezzled. The restitution figure agreed to by Defendant, her criminal defense counsel, and the State of New Mexico was $40,097.04. According to Defendant's testimony, the amount was agreed to by the parties after reviewing the information Ms. Lopez compiled. Defendant's counsel challenged a number of Ms.

---

[6] Proximate causation requires both causation in fact and legal causation. *Musgrave*, 2011 WL 312883, at *9. Causation in fact requires that the debtor's questioned actions be a "substantial factor in determining the course of conduct that results in [the] loss. *Id.,* quoting the Restatement (Second) of Torts (1976), § 546. Legal causation requires that a creditor's loss "reasonably be expected to result from" the debtor's questioned actions. *Id.* at *10, quoting Restatement, § 548A.

-7-

Lopez' entries, and was able to reduce Ms. Lopez' $60,351.76 figure to $40,097.04, a reduction of 34%.

The Court finds that the $40,097.07 figure is reasonable and will adopt it.

B.     Accounting Fees

Under *Musgrave,* Plaintiff is entitled to recover "the actual cost of accounting fees incurred to discover and verify the sums involved." *Musgrave,* 2011 WL 312883, at *11, citing *Brookman v. Gibson (In re Gibson),* 77 B.R. at 831. *See also Loken,* 32 B.R. 205, 208 (Bankr. W.D. Wis. 1983) (audit fees properly includable in § 523(a)(4) judgment amount). Here, Plaintiff claims $14,300 in audit fees, $12,800 for Ms. Lopez' time and $1,500 for time spent by JoAnn. This amounts come from the hours spent by Ms. Lopez and JoAnn auditing Plaintiff's books and records after the Albuquerque office was closed in 2008.

*Musgrave*, *Gibson,* and *Loken* dealt with outside accounting fees, not time spent by employees of the victimized business. The Court found no case law support for including internal audit work in the nondischargeable amount. When an outside accounting firm is retained, its fees are an out-of-pocket expense. The case is altered with employee work, since no additional expense is incurred.[7] The time spent by Ms. Lopez and JoAnn was an administrative burden, to be sure, but is not a proper component of a nondischargeable judgment.

Furthermore, there is insufficient evidence of the reasonableness of such amounts. With outside accountants, the Court can review fee bills and determine whether the fee was reasonable. No similar documentation was provided by Plaintiff.

---

[7] There was no evidence that Plaintiff paid overtime to either Ms. Lopez or JoAnn.

-8-

The Court will not add the internal audit amount to the nondischargeable judgment.

C. <u>Binding and Copying Expenses</u>. Plaintiff seeks to include in the nondischargeable judgment $400 for the cost of binders and $500 for copying costs. The Court finds that these amounts should not be included in the nondischargeable judgment, because the evidence supporting the expenses is insufficient and lacking in detail. $400 for binders seems excessive to the Court, and the round numbers indicate that the figures may not be accurate. No receipts were provided. It could be that, as with the internal audit figure, the copy charges are for copies made with Plaintiff's copy machine. If so, there is no indication about the per page charge, and whether it is reasonable. Finally, it is not clear that this cost was proximately caused by the embezzlement.

D. <u>Other Amounts</u>. Originally, Plaintiff had asked for additional sums totaling about $31,500, plus punitive damages. At the final hearing on damages, however, Plaintiff's damages request excluded these amounts. The Court therefore will not include any of them. The Court also finds that no other damages were proximately caused by Defendant's embezzlement.

E. <u>Restitution Payments</u>. Defendant, mostly acting through the good efforts of her mother, paid a total of $845 to Plaintiff pursuant to the plea agreement. This should be deducted from the nondischargeable amount.

F. <u>Final Nondischargeable Amount</u>. The Court finds that the appropriate nondischargeable amount, given the record in this adversary proceeding, is $40,097.07, less $845, or a net of $39,252.07.

III.   CONCLUSION

This is an unfortunate case. Defendant clearly embezzled some amount of money from Plaintiff. The most accurate figure available to the Court is $40,097.07. It could be, however, that if Defendant had had the resources to mount a vigorous defense, the figure could have been further reduced. It appears to the Court that many instances labeled embezzlement by the Plaintiff simply had insufficient documentation to demonstrate their legitimacy. A skilled accountant likely could have evaluated and presented a better case for reducing the claimed embezzlement than a harried public defender who possessed, perhaps, less knowledge of cost accounting.

Furthermore, Plaintiff is not entirely without blame in this situation, for two reasons. First, much of what was later deemed embezzlement started out as purchases and other charges specifically or tacitly approved by Ms. Lopez. As Defendant testified, some initial questionable charges were permitted by Plaintiff, but eventually Defendant's payment of personal expenses with Plaintiff's funds "got out of hand." It does not appear that Plaintiff gave Defendant sufficient early guidance about the difference between acceptable and unacceptable use of company money for personal expenses.

Second, Plaintiff's accounting controls were almost nonexistent. Most embezzlers go to great lengths to conceal their theft, creating dummy bank accounts, dummy expense accounts, false invoices, and the like. In this case, the improper charges were easily discoverable by anyone taking the trouble to review Plaintiff's bank account statements, credit card statements, and similar books and records. No one took the trouble. Had Plaintiffs' financial controls been even marginally businesslike, Defendant's pattern of charging personal expenses to the company account would have

been detected early on, and Defendant would either have been fired or set straight. In such an event, Plaintiff would have saved a lot of money and aggravation, and Defendant's life might not have been ruined.

Defendant of course deserves most of the blame. Although perhaps lulled into a false sense that what her conduct was tolerated, she must have known that many of her charges were way over the line. Defendant embezzled money from Plaintiff, and can only blame herself for her terrible lapses of honesty and judgment.

When the matter got to the Court, the dire nature of the situation was clear. Her embezzlement conviction rendered Defendant unemployable, homeless, unable to care for her children, and unable to pay restitution to Defendant. The sole source of prior restitution payments, Defendant's mother, had lost her job. Proceeding with Plaintiff's nondischargeability action to judgment seemed certain to benefit no one.

It was for this reason the Court ordered the parties to mediate, thinking that a much better solution might be (to give just one possible alternative outcome) to have the embezzlement conviction satisfied or vacated, in exchange for Defendant's agreement to pay a portion of her future earnings to Plaintiff. The Court imposed upon James C. Jacobsen, a well-respected local attorney, to mediate the matter free of charge. Mr. Jacobsen, in the Court's opinion, was well-situated to fashion a settlement that would have been much better for both sides than anything the Court could achieve. In an inexplicable (further) outburst of self-destructive behavior, Defendant refused to participate in or even attend the mediation.

Case 09-01089-t    Doc 84    Filed 03/11/14    Entered 03/11/14 16:26:39 Page 11 of 12

The Court will enter a separate judgment that Defendant owes Plaintiff $39,252.07 that is nondischargeable under § 523(a)(4).

_____
Hon. David T. Thuma
United States Bankruptcy Judge

Entered on Docket: March 11, 2014.

Copies to:

Trace Rabern
119 East Marcy Street, #201
Santa Fe, NM 87501

Mike Daniels
P.O. Box 1640
Albuquerque, NM 87103

Stacy Baker
3303 Shepard Place, NE
Albuquerque, NM 87106